ANNIE MARIE WENDELL, GUARDIAN, ETC., v. PHILO CRYSLER ET AL., AND AGNES W. LENDRUM v. PHILO CRYSLER ET AL.

[Two cases.]

*Principal and agent—Mortgage—Assignment—Fraud—Estoppel.*

In this case the complainant seeks to reform a mortgage and note taken in her name, when, as she claims, they should have been executed to her as guardian of her children, who were the

owners of the land to secure a portion of the purchase price of which the securities were given, and to foreclose said mortgage, which, with the note, had been assigned by her attorney in fact to a third party, as complainant claims, without authority. The assignee was not made a party, but filed a bill to foreclose the mortgage. The two cases were consolidated, and a decree rendered in favor of said assignee, which is affirmed. The case is one involving questions of fact purely.

Appeal from Emmet. (Ramsdell, J.) Argued October 16 and 17, 1888. Decided January 25, 1889.

Bills to foreclose mortgage. Complainant Mrs. Wendell appeals from decrees dismissing her bill, and granting relief in second case. Affirmed. The facts are stated in the opinion.

*Norris & Norris,* for complainant, Mrs. Wendell.

*Jas. R. Wylie* (*C. J. Pailthorp, R. M. Montgomery,* and *Benj. T. Halstead,* of counsel), for appellees.

MORSE, J. Jacob A. T. Wendell, of Mackinac Island, died November 24, 1879, intestate, leaving the complainant, his widow, and two children, Eva M. and Romaine I., both under the age of 17 at the time Mrs. Wendell filed her bill, as his sole heirs at law. They also became heirs by his death, to the estate of George T. Wendell, his brother, who died leaving Jacob A. T. his sole heir or legatee. The property thus acquired consisted largely of lands situated in Emmet, Cheboygan, Mackinac, and other counties. There was but little personal property.

Mrs. Wendell alleges in her bill that at her husband's death she was ignorant of the extent, character, and situation of his estate. She had no business experience, and was incapable of managing, without assistance, the property of her minor children. January 7, 1880, she was appointed administratrix of her husband's estate, and guardian of the children; also administratrix (with the

will annexed) of the estate of George T. Wendell. She employed William P. Preston to act for her, and delivered to him the following power of attorney:

"*Know all men*, that I, Annie Marie Wendell, of Mackinac, Mackinac county, Mich., do hereby constitute and appoint William P. Preston, of Mackinac, Mackinac county, Mich., my attorney, for me and in my name to contract, bargain, lease, and sell all my property, whether real or personal, and wherever the same is situate, which I am or may become possessed of, upon such terms of credit, and to such person or persons, as he shall think fit, and to sign all leases and other contracts in my name, excepting by deed in fee-simple, by deed of general warranty, or quitclaim, which right is hereby reserved to myself; hereby ratifying and confirming all such bargains, receipts, agreements, and leases as shall be made, executed, or acknowledged in the premises by my said attorney, the same as if I was personally present and did the same.

"In witness whereof the said Annie Marie Wendell has hereunto set her hand and seal, this 29th day of September, 1881.

"ANNIE MARIE WENDELL. [L. S.]

"Signed, sealed, and delivered in presence of
"E. H. PLUNMER.
"EDWIN Z. PERKINS."

This instrument was duly acknowledged on the same day, and was recorded in the proper office on October 20, 1883. She further avers that she employed Humphrey & Perkins, of Cheboygan, as her attorneys, and implicitly followed their direction and advice for some time, and that she executed this power of attorney under their advice. The bill alleges that this instrument is the only power of authority she ever gave the said Preston to act for her, or that he ever requested her to give him. In the month of June, 1885, she first learned that he claimed to have power to act as the general agent and attorney in fact for the estates of the minors, her deceased husband, and George T. Wendell, deceased.

August 17, 1885, she revoked this power of attorney, and recorded such revocation.

October 16, 1883, the complainant, as general guardian of the minors, was licensed by the circuit court for the county of Mackinac, in chancery, to sell at private sale certain real estate of said minors in the county of Emmet, among which was the land in controversy, situate in the village of Little Traverse, now Harbor Springs. October 17, 1883, she signed an executory contract for the sale of this Harbor Springs land to the defendant Philo Crysler, in which it was agreed to sell the same for $2,300, to be paid on or before the confirmation of the contract by the court, which contract is in her possession. She further states, upon information from her solicitor, that in the files of the court there appears and is filed another contract purporting to be signed "Annie Marie Wendell, by W. P. Preston, her Attorney," and "Philo Crysler, by Benj. T. Halstead, his Attorney." This contract differs from the one she executed in that it provides that the payments shall be $300 in cash, $1,000 on confirmation of sale, and $1,000 within two years, with interest at 7 per cent. She denies any knowledge of this contract, or any assent to it, and avers that it was executed without authority, and is void.

She alleges that she was led into the sale of these premises by the representations of Preston that the money was needed to pay taxes on the lands belonging to the minors' estate, and that Crysler would pay $1,000 down, and $1,300 in one year, at 7 per cent. She thereupon signed some memorandum or agreement presented to her by Preston, concerning such sale, and thereafter signed all such papers as were presented to her in relation to the matter by Humphrey & Perkins, who were her attorneys at that time. She signed the petition for

license, and a bond on sale, and two deeds of 'the land to Crysler. Preston, in 1884, told her that the $1,000 had been paid to him and used for taxes, and that everything was all right, which she believed until the summer of 1885, when she learned his statement was false. She applied to him in the fall of 1884 to collect for her, as guardian of said minors, the $1,300, and was then informed by him that it was not due until in the fall of 1885.

After revoking Preston's power of attorney, she placed her matters in the hands of Messrs. Norris & Uhl, of Grand Rapids, and she alleges, upon information received from them,—

1. That said Preston, in said Crysler matter, took a mortgage and note from said Crysler, dated March 25, 1884, for $1,000, payable to her, Annie Marie Wendell, personally, and not as guardian, in two years, with interest at 7 per cent. per annum.

2. Said Preston, on May 14, 1884, sold and delivered, without authority, this note and mortgage to James R. Wylie, who had notice of such want of authority, and who directed the assignment to be made to his wife, Jeannette C. Wylie, who also had notice that Preston had no authority to make such assignment

3. Norris & Uhl, as her attorneys, on or about August 25, 1885, notified the said Philo Crysler and Jeannette C. Wylie, by letter, that this mortgage should have been executed to Mrs. Wendell as general guardian of the minors, to whom it belonged as a part of their estate, and that the mortgage, and the assignment thereof by Preston, were not in accordance with the contract of sale, and both without authority, and void; notifying Crysler not to pay the note and mortgage, and demanding of him the payment of the amount of it to Mrs. Wendell as such general guardian, and acquainting Mrs. Wylie with this notice and demand, and that steps would be taken to collect of Crysler, if he did not pay to Mrs. Wendell.

It is alleged in the bill that Crysler received this notice August 26, 1885, and Mrs. Wylie, August 27, 1885.

It is further averred that the said mortgage and note were in law and equity fraudulently taken in the name of Mrs. Wendell individually, with notice to the defendants Crysler and Wylie, to enable said Preston fraudulently, under color of said power of attorney, to obtain the proceeds of the sale to his own use, which he did; and the bill prays a reformation of the instruments, so that they shall run to Mrs. Wendell as general guardian of the minors, and asks a foreclosure of the same as so reformed.

To this bill the Wylies answered by a plea that Mrs. Wylie purchased the mortgage and note in good faith, and that on September 3, 1885, she transferred them for value to one Agnes W. Lendrum, of Newburg, N. Y., who bought the same for $1,000, without any notice of any defect in the instruments. James R. Wylie pleaded his entire want of interest in the securities or the subject-matter of the bill, and Mrs. Wylie pleaded her transfer, and insists that Miss Lendrum is a necessary party to the bill, but not joined.

The Cryslers answered, averring that the complainant permitted Preston to act for her in all matters under his power of attorney, and that in this particular case he acted for her, with her assent and approval, up to and including the deeds to them of the lands; that these deeds were delivered to Philo Crysler by the agent of complainant, and that said deeds were duly executed and acknowledged by her,—one as guardian, and the other individually; and that, at the time of such delivery of the deeds, they executed and acknowledged the mortgage and note (the note being non-negotiable) for the sum of $1,000, payable as stated in said bill, and delivered the same to her agent. They deny that Preston had no authority to take this note and mortgage and to assign the same to Mrs. Wylie; deny that they had notice of any

fraud or want of authority in Preston, until they received the notice sent Philo Crysler by Norris & Uhl; allege that they have also received notice from Wylie that the note and mortgage belong to Miss Lendrum; admit they owe the amount of it; and aver they now are willing to pay the amount due to the rightful owner of the securities. To the plea of the Wylies and the answers of the Cryslers the complainant filed replications.

Miss Lendrum filed her bill to foreclose the note and mortgage in controversy, to which Annie Marie Wendell answered, as did the Cryslers.   These answers raised the same issues as in the first bill.

The causes were consolidated and heard together.   Testimony was taken in open court, and, on hearing, the bill of Mrs. Wendell was dismissed, and a decree of foreclosure granted in favor of Miss Lendrum.   Mrs. Wendell, as guardian, appeals to this Court.

The decree is right, and must be affirmed, with costs. Mrs. Wendell was not sworn in the case, and the main or material allegations of her bill are not supported by any proof whatever.

These facts appear:   The lands sold belonged to the minors, incumbered with the dower interest of Mrs. Wendell.   They were contracted to be sold for $2,300, dower included.   How much her dower right amounted to does not appear.   She gave to Preston the power of attorney, and it was revoked as stated in her bill.   He transacted all her business as administratrix and guardian without any dissent, and presumably with her assent, up to about the time of such revocation.   There is no proof save rumor, and the allegations in the bill, that Preston ever defrauded her or the minors out of a dollar, or that his account, as filed in the probate court for the county of Mackinac, is not a true and just one, save, perhaps, in the amount of his charges for personal expenses or ser-

vices. The contract filed in the chancery court for the sale of the lands is signed, "Annie Marie Wendell, by W. P. Preston, her Attorney," and was of public record, open to her inspection at any time. She herself signed the deeds disposing of the lands described in said contract, and sold in conformity therewith. There is no evidence, outside of the bill of complaint, that she was not acquainted with the terms of this contract, and the form and tenor of the note and mortgage taken in part payment of the lands sold; nor is there any satisfactory evidence that the moneys received upon the sale of the lands, and the assignment of the note and mortgage to Mrs. Wylie, have not been legitimately applied to the payment of taxes, and other expenses of administering the estate of the minors.

It appears without contradiction that the drafts received by Preston from Wylie in payment for the transfer of the note and mortgage to Mrs. Wylie were indorsed to the county treasurer of Mackinac county, and a portion of them used in paying the taxes on the Wendell lands. It is admitted and proven beyond question that Mrs. Wendell permitted Preston to transact all the business of the Wendell estate, holding him out to the world, both by her power of attorney and her subsequent acts, as her duly authorized agent, empowered to act for her in all matters pertaining to the Wendell property. In this particular case she assented to and recognized the contract filed in the chancery court, by her petition to sell, her bond on sale, and her deeds of her individual interest and as guardian, all of which instruments were signed by her.

It is claimed that the drafts on New York, received on the sale of the note and mortgage to Wylie, which were made payable to the order of Annie Marie Wendell individually, and not as guardian, were not indorsed by her,

and that her name was forged thereto.   One witness swears that it does not look like her handwriting, and we are satisfied by a comparison of these indorsements with her admitted signature to other documents in the case that she did not write them.   But there is no evidence that she did not authorize Preston to indorse them in her name.   She is not sworn.   The drafts were sent to her attorneys, by Wylie, in the spring of 1886, that they might investigate the matter, and, if the indorsements were forged, take steps to recover the money upon them.   L. D. Norris, one of said attorneys, wrote Wylie, of date March 23, 1886, that he was disposed to send the drafts to New York, and make an attempt to collect the amount procured by Preston thereon, and that might open a way for the settlement of the matters in difference between Wylie and Mrs. Wendell; that this was all he felt at liberty to say until he had a personal interview with Mrs. Wendell.   On April 2, 1886, Norris wrote again to Wylie, returning the drafts, stating that he could not come to any satisfactory conclusion about the matter until he saw Mrs. Wendell.   Afterwards he commenced this suit. It does not appear whether he saw Mrs. Wendell or not, in relation to these drafts, but it is evident that for some reason he did not care to test the validity of these indorsements, as far as his client was concerned.   It also appears from the account filed by Preston in the probate court that after he negotiated these drafts he paid over to Mrs. Wendell more than the amount of them.   She is not sworn to deny the correctness of this account.   This identical money, as far as we know, except what was paid for taxes on the Wendell property, may have been paid into her hands.

But whether she indorsed these drafts, or authorized their indorsement, or not, it cannot help in the present controversy.   If Preston had authority to assign this

note and mortgage to Wylie, or her conduct had been such that he had apparent authority to do so, which by such conduct she was estopped from questioning, it matters not what he did with the proceeds of the sale,— whether he accounted to her for such proceeds or not. The parties defendant had a right to suppose that Preston was acting within his authority, and with the assent of Mrs. Wendell.

It is not satisfactorily shown that the estate of the minors has lost anything by any of the transactions relating to the sale of the lands, or the giving, taking, or disposition of the securities, or the handling or using of the proceeds of such sale of the lands and the note and mortgage. It is the duty of the complainant in this case to establish her claim by some evidence if she wishes to throw the loss upon innocent parties. Preston was offered as a witness in behalf of the defendants after the proofs had been closed by stipulation between the parties, but the solicitor for the complainant objected, and he was not permitted to testify. Thus the only persons— Mrs. Wendell and Preston—who knew whether or not Preston had accounted for this money, or whether or not Mrs. Wendell had assented to the whole transaction, were not produced as witnesses, and we are without their testimony upon the vital points in the case. If there has been any loss to the estate, of which we have no proof, such loss has occurred through the incompetency and negligence of Mrs. Wendell, from her own showing in her bill of complaint, and not through any fault of any of the defendants.

The complainant and her bondsmen are responsible, and the minors must, under the circumstances, look to her for redress, if they have been wronged. If the sale of this land had been for cash, and Preston had squan-

73 Mich.—28.

dered the money, the defendant Crysler could not have been called upon to pay a second time for the land, nor can he be required to do so now.

Under the power of attorney on record, and by the manner in which Mrs. Wendell had permitted him to act under it and for the Wendell estate, in every detail, except the execution of deeds, Miss Lendrum was justified in supposing that she was getting a good title to the securities she bought of the Wylies. There is no good reason why she should suffer on account of the embezzlement of the funds of the Wendell estate by Preston, if there has been any such embezzlement,—of which there is no proof, save a color of suspicion raised by the filing of the bill in this case, and the proceedings begun in the probate court to bring him to an accounting.

· The decree of the court below will be affirmed, with costs.

The other Justices concurred.